# WILSON, ELSER, MOSKOWITZ, EDELMAN & DICKER LLP

3 Gannett Drive, White Plains, New York 10604   Tel: (914) 323-7000   Fax: (914) 323-7001

*New York • Los Angeles • San Francisco • Washington, DC • Newark • Philadelphia • Baltimore • Miami • Chicago*
*White Plains, NY • Dallas • Albany, NY • San Diego • Houston • Garden City, NY • Boston • London*
*Affiliate Offices: Paris • Berlin • Cologne • Frankfurt • Munich*

—

www.wilsonelser.com

April 15, 2009

Honorable Gary L. Sharpe
United States District Judge
Northern District of New York
James T. Foley US Courthouse
445 Broadway
Albany, NY 122207

      Re:    OneBeacon Insurance Co. a/s/o The Garrett Hotel Group
               v. Comsec Ventures, et. al
               Civ. No.: 8:07-CV900 (GLS/RFT)
               Our File No.: 10666.00001

Dear Judge Sharpe:

      In accordance with the instruction we received from your clerk, Eric Law, we are submitting this letter in response to the "motion" submitted by the plaintiff seeking leave to submit a "surreply" and "further opposition" with respect to the motion for summary judgment submitted by Mahoney. It is respectfully submitted that this purported motion seeking a surreply and further opposition should be denied in its entirety.

      After Mahoney filed its motion for summary judgment, on February 18, 2009, the Court set forth a briefing schedule. The plaintiff's opposition was due on March 16, 2009, and Mahoney's reply was due March 23, 2009. The plaintiff had almost a full month to prepare and file its opposition. There was no scheduling order for a surreply or further opposition nor is a surreply or further opposition warranted in this matter.

      Pursuant to Northern District Local Rule 7.1(b)(1) a surreply is not permitted. The plaintiff's surreply attached to its motion seeking leave to file same should be disregarded by this Court. Massie v. Ikon Office Solutions, Inc., 381 F. Supp. 2d 91 (N.D.N.Y. 2005)(The Court did not consider the surreply as the Northern District Rules do not permit a surreply). When the plaintiff submitted its opposition papers, it was aware of all issues that were raised within Mahoney's motion for summary judgment, the Federal Court and Local Court rules with respect to the requirements for same, and had an opportunity at that time to respond in full. A surreply is not only not permitted, it is not warranted and this Court should not provide the plaintiff with an impermissible attempt at rearguement or to seek to have the last word. See, Clark v. City of Oswego, 2006 U.S. Dist. LEXIS 95769, 25 (N.D.N.Y. 2007).

2351338.1

Page 2

Further, nowhere within the plaintiff's purported motion is it even claimed that Mahoney raised any new issue within its reply such that a surreply or further opposition would even be warranted. This was not claimed as it is clear that Mahoney did not raise any new issue within its reply. Through this purported motion, the plaintiff seeks to readdress and supplement issues already addressed within its opposition. This purported motion is nothing more than an impermissible attempt by the plaintiff to seek the last word with respect to Mahoney's motion for summary judgment which is pending before this Court. This should not be allowed by this Court and as such, the plaintiff's "motion" should be denied in its entirety.

Respectfully submitted,

WILSON, ELSER, MOSKOWITZ, EDELMAN & DICKER LLP

Bernice E. Margolis (514756)

Encl.

cc:   Thomas J. O'Connor, Esq.
      Michael Izzo, Esq.



GEORGE X. CLARK, Plaintiff, v. CITY OF OSWEGO, JOHN J. GOSEK, individually, and as Mayor of the City of Oswego, BARBARA DONAHUE, Individually and as Alderwoman of the City of Oswego, WILLIAM DUNSMOOR, Individually and as Alderman of the City of Oswego, SUSAN GENTILE DEARY, f/k/a Susan Gallagher, Individually and as Alderwoman of the City of Oswego, DAVID HALL, Individually and as Alderman of the City of Oswego, WILLIAM MERCIER, Individually and as Alderman of the City of Oswego, Defendants.

5:03-CV-202 (NAM/DEP)

UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF NEW YORK

2006 U.S. Dist. LEXIS 95769

March 26, 2006, Decided
March 26, 2007, Filed

COUNSEL: [*1] PHILLIP G. STECK, ESQ., BRIAN W. MATULA, ESQ., COOPER ERVING & SAVAGE, LLP, Albany, New York, Attorneys for Plaintiff.

SCOTT J. DELCONTE, ESQ., JOHN D. ALLEN, ESQ., BOND, SCHOENECK & KING, PLLC, Oswego, New York, Attorneys for Defendants.

JUDGES: Norman A. Mordue, Chief United States District Court Judge.

OPINION BY: Norman A. Mordue

OPINION

MEMORANDUM - DECISION AND ORDER

Currently before the Court is defendants' motion to dismiss plaintiff's complaint in its entirety and with prejudice pursuant to *Rule 12(b)(6) of the Federal Rules of Civil Procedure* for failure to state a claim upon which relief can be granted. See Dkt. No. 6, Notice of Mot. Plaintiff opposes defendants' motion. See Dkt. No. 8, Mem of Law. For the reasons that follow below, the Court GRANTS defendants' motion to dismiss plaintiff's complaint in its entirety and with prejudice.

I. BACKGROUND

Plaintiff, George X. Clark, filed this action seeking damages under *42 U.S.C. § 1983* to redress alleged violations of his rights under the *First* and *Fourteenth Amendments to the United States Constitution* against defendants: the City of Oswego ("the [*2] City"); John J. Gosek, individually and as Mayor of the City ("Gosek"); Barbara Donahue, individually, and as Alderwoman of the City ("Donahue"); William Dunsmoor, individually, and as Alderman of the City ("Dunsmoor"); Susan Gentile f/k/a Susan Gallagher, individually, and as Alderwoman of the City ("Gallagher"); David Hall, individually, and as Alderman of the City ("Hall"); and, William Mercier, individually, and as Alderman of the City ("Mercier"). [1] See Dkt. No. 1, Compl. at PP 1, 5-14. Plaintiff challenges defendants' alleged retaliatory elimination of his position as zoning enforcement officer for engaging in protected speech and sets forth three causes of action in this regard: (1) a *First Amendment* retaliation claim; (2) a *Section 1983* civil conspiracy claim against the individual defendants; and, (3) a separate *Section 1983* claim against the City of Oswego. See id. at PP 37-37; 48-50; and, 51-56. Plaintiff premises jurisdiction on *28 U.S.C. § 1331* and *28 U.S.C. § 1343*. See id. at P 3.

1  By operation of *Rule 25(d) of the Federal Rules of Civil Procedure*, the Court notes of the following automatic substitutions: Mayor Randolph F. Bateman for Gosek in his official capacity; First Ward Alderwoman, Constance M.

Cosemento for Mercier in his official capacity; Third Ward Alderman Edward J. Harrington for Hall in his official capacity; Fifth Ward Alderman Daniel G. Donovan for Gallagher in her official capacity; and Seventh Ward Alderman Richard L. Atkins for Dunsmoor in his official capacity. Any misnomer in the caption of this action is treated as one "not affecting the substantial rights of the parties." *Curran v. Lee, 484 F.2d 1348, 1349 (2d Cir. 1973)* (citing *FED R. CIV. P. 25(d)*).

[*3] Plaintiff began employment with the City as a draftsman in 1972. In 1973, plaintiff was promoted to engineering aide, and a year later, he was promoted to zoning assistant. In 1984, the City changed the designation of plaintiff's position to Zoning Enforcement Officer, and from 1984 until the elimination of the position in 2000, plaintiff served as Zoning Enforcement Officer for the City. *See* Dkt. No. 1, Compl. at P 15.

On several dates, including, but not limited to, January 25, 2000, January 26, 2000, August 3, 2000, August 28, 2000, September 26, 2000, and October 24, 2000, plaintiff engaged in speech relating to the City's zoning policies and zoning enforcement abilities. Specifically, plaintiff's speech targeted decisions and proposals made by Gosek and the City Common Council ("Common Council")[2] relating to the City's ability to enforce certain zoning ordinances, as well as other matters of alleged public concern.[3] Portions of plaintiff's speech were published in electronic or newspaper media. *See id.* at P 16.

> 2 The Common Council is comprised of seven members, five of whom plaintiff has named as defendants.

[*4]

> 3 Plaintiff's complaint does not include an exact transcript of his public comments, but rather offers the general characterization that his public comments pertained to the City's ability to enforce zoning ordinances.

On February 16, 2000, plaintiff was informed that his competitive civil service job description was changed to indicate that his immediate supervisor would no longer be the City's mayor, but rather the City's engineer. Following plaintiff's "demotion," on March 1, 2000, plaintiff's counsel sent the Mayor's Office a letter claiming that the demotion was in retaliation for plaintiff's exercise of free speech and indicating that plaintiff was contemplating legal action to challenge and remedy the demotion. *See id.* at PP 19-20. Not having received a response from the Mayor's Office, on October 11, 2000, plaintiff's counsel sent the City a letter demanding that it respond to plaintiff's claims by October 23, 2000. On October 23, 2000, Gosek issued a letter to plaintiff indicating that his position of Zoning Enforcement Officer was "being reduced to one-half time with proportionate [*5] reduction in pay, as of December 31, 2000." *See id.* at PP 23-24. On November 13, 2000, Gosek proposed to the Common Council an operating budget that reduced plaintiff's position to part-time. That same day, Mercier suggested an amendment to the City's budget proposal, which Dunsmoor seconded and the Common Council adopted. The proposed amendment did not provide funding for plaintiff's employment position. By a vote of five to two, the Common Council voted in favor of the City budget proposal ("the Vote"), including the amendment, and thereby eliminated plaintiff's employment position. *See* Dkt. No. 1, Compl. at PP 27-29; Dkt. No. 7, Defs.' Mem. of Law in Supp. of Mot. to Dismiss at 2. Plaintiff claims that the Common Council and Gosek approved the City Budget, including the amendment that eliminated plaintiff's employment position, in retaliation for plaintiff's protected speech regarding the City's enforcement of zoning ordinances.

In his complaint, plaintiff also sets forth a number of confrontations and hearsay allegations which inform his claims. Plaintiff submits that prior to the Vote, he had cited Gosek for building without a permit. *See id.* at P 32. Plaintiff alleges [*6] that prior to the Vote, Gosek told Jim Cloonan, the Oswego County Republican Party Chairman, that he would not allow plaintiff to "get away" with his public comments. *See id.* at P 17. Prior to the Vote, plaintiff met with Gosek and Jack McGill, the City's Personnel Director, at which time Gosek allegedly confirmed his intent to dissuade plaintiff from making any further comments to the newspapers about zoning in the City. *See id.* at P 26. Plaintiff also alleges that prior to the Vote, Gallagher admitted to Thad Iorizzo, the former City Building Inspector, that the elimination of plaintiff's position was politically motivated inasmuch as Gosek was "trying to oust employees remotely related to the prior administration." *Id.* at P 30. With respect to Dunsmoor, plaintiff alleges that prior to the Vote, Frank Barilla, Chairman of the City's Zoning Board of Appeals, approached Dunsmoor in an attempt to secure political support for retaining plaintiff's full-time position. Dunsmoor allegedly advised Barilla that he was unhappy with plaintiff's public comments and would not help plaintiff retain his position. *See* Dkt. No. 1, Compl. at P 25. In addition, plaintiff alleges that [*7] prior to the Vote, he and Mercier were involved in a public controversy. Acting in his official capacity, plaintiff stopped a contractor, hired by Mercier, from "improperly" extending a driveway into public space. *See id.* at P 31. In a newspaper article that followed, plaintiff defended his action while Mercier accused plaintiff of politically motivated harassment. *See id.*

Case 8:07-cv-00900-TJM-RFT   Document 63   Filed 04/15/09   Page 5 of 10

Page 3
2006 U.S. Dist. LEXIS 95769, *

Defendants now move to dismiss plaintiff's complaint, in its entirety, with prejudice, pursuant to *Rule 12(b)(6) of the Federal Rules of Civil Procedure* for failure to state a claim upon which relief can be granted. Defendants argue: (1) Gosek and the Common Councilor defendants are absolutely immune from *Section 1983* liability for their legislative activities, which include, as a matter of law, the introduction and enactment of the operating budget; (2) plaintiff was not demoted when he was notified that his immediate supervisor was no longer the mayor, but rather the City Engineer; (3) plaintiff has failed to state a claim for civil conspiracy against the individual defendants because all of them are agents and/or officers of the City; (4) plaintiff has failed to [*8] allege facts sufficient to state a claim that the City had an official policy to punish him for his protected speech; and, (5) plaintiff's demand for punitive damages against the City must be dismissed as a matter of law. [4] *See* Dkt. No. 7, Mem. of Law at 1.

> 4    Plaintiff does not seek punitive damages against the City, and thus defendants' argument is moot. *See* Dkt. No. 8, Pl.'s Mem. of Law at 16.

## II. DISCUSSION

*A. Motion to Dismiss: the Standard Under Rule 12(b)(6)*

*Rule 12(b)(6) of the Federal Rules of Civil Procedure* provides that a cause of action shall be dismissed if a complaint "fails to state a claim upon which relief can be granted." *FED. R. CIV. P. 12(b)(6)*. A dismissal pursuant to *Rule 12(b)(6)* is warranted only where "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson, 355 U.S. 41, 45-46, 78 S. Ct. 99, 2 L. Ed. 2d 80 (1957)* [*9] (footnote omitted); *see also Irish Lesbian and Gay Org. v. Giuliani, 143 F.3d 638, 644 (2d Cir. 1998)* (citing *Sheppard v. Beerman, 18 F. 3d 147, 150 (2d Cir. 1994)).* "The task of the court in ruling on a *Rule 12(b)(6)* motion 'is merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof.'" *Cooper v. Parsky, 140 F. 3d 433, 440 (2d Cir. 1998)* (quoting *Ryder Energy Distribution Corp. v. Merrill Lynch Commodities Inc., 748 F. 2d 774, 779 (2d Cir. 1984)).* While the Court need not accept mere conclusions of law, in assessing plaintiff's complaint, "the court must presume that the allegations in the complaint, and all reasonable inferences that can be drawn from them, are true." *Woodford v. Cmty. Action Agency of Greene County, Inc., 239 F. 3d 517, 526 (2d Cir. 2001)* (citing *Lee v. Bankers Trust Co., 166 F.3d 540, 543 (2d Cir. 1999)).* However, while the Court must accept the non-moving party's well-pleaded factual allegations as true, the court need not accept the pleader's "legal conclusions [and] characterizations. [*10] " *Madonna v. United States, 878 F. 2d 62, 65 (2d Cir. 1989); see Leeds v. Meltz, 85 F.3d 51, 53 (2d Cir. 1996)* ("While the pleading standard is a liberal one, bald assertions and conclusions of law will not suffice."). Furthermore, when deciding a *Rule 12(b)(6)* motion, a court must limit its consideration "'to facts stated on the face of the complaint, in documents appended to the complaint or incorporated in the complaint by reference, and to matters of which judicial notice may be taken.'" *Leonard F. v. Israel Disc. Bank of N.Y., 199 F.3d 99, 107 (2d Cir. 1999)* (quoting *Allen v. West Point-Pepperell, Inc., 945 F.2d 40, 44 (2d Cir.1991)).* A defendant cannot, "in presenting its 12(b)(6) challenge, attempt to refute the complaint or to present a different set of allegations." *Gomez v. Illinois State Bd. of Educ., 811 F. 2d 1030, 1039 (7th Cir. 1987).*

*B. Plaintiff's First Amendment Retaliation Claim: the Standard Under 42 U.S.C. § 1983*

In *Morris v. Lindau, 196 F.3d 102 (2d Cir. 1999),* the Second Circuit set forth the standard for *First Amendment* retaliation [*11] claims brought by public employees:

> a plaintiff making a *First Amendment* retaliation claim under *42 U.S.C. § 1983* must initially demonstrate by a preponderance of the evidence that: (1) his speech was constitutionally protected, (2) he suffered an adverse employment decision, and (3) a causal connection exists between his speech and the adverse employment determination against him, so that it can be said that his speech was a motivating factor in the determination. If a plaintiff establishes these three factors, the defendant has the opportunity to show by a preponderance of the evidence that it would have taken the same adverse employment action even in the absence of the protected conduct.

*Morris, 196 F.3d at 110.* With respect to the first factor, the United States Supreme Court has held that a public employee does not relinquish *First Amendment* rights to comment on matters of public interest by virtue of government employment." *Connick v. Myers, 461 U.S. 138, 140, 103 S. Ct. 1684, 75 L. Ed. 2d 708 (1983)* (citing *Pickering v. Board. of Educ., 391 U.S. 563, 568, 88 S. Ct. 1731, 20 L. Ed. 2d 811 (1968)).* With respect to the second factor, adverse employment actions [*12] include discharge, refusal to hire, refusal to promote, de-

motion, reduction in pay, and reprimand. *See Morris, 196 F.3d at 110*. Finally, with respect to the third factor, the Second Circuit has indicated that "the causal connection must be sufficient to warrant the inference that the protected speech was a substantial motivating factor in the adverse employment action, that is to say, the adverse employment action would not have been taken absent the employee's protected speech." *Id*. In this regard, "a plaintiff can indirectly establish a causal connection to support a discrimination or retaliation claim by 'showing that the protected activity was closely followed in time by the adverse [employment] action.'" *Gorman-Bakos v. Cornell Cooperative Extension of Schenectady County, 252 F.3d 545, 554 (2d Cir. 2001)* (citing *Reed v. A.W. Lawrence & Co., 95 F.3d 1170, 1178 (2d Cir. 1996))*. There is "no bright-line test to define the outer limits beyond which a temporal relationship is too attenuated to establish a causal relationship between the exercise of a federal constitutional right and an allegedly retaliatory action." *Gorman-Bakos, 252 F.3d at 554*. [*13] [5]

   5   *Gorman-Bakos* compares *Richardson v. New York State Dep't of Corr. Serv., 180 F.3d 426, 446-47 (2d Cir. 1999)* (holding abusive acts within one month of receipt of deposition notices may be retaliation for initiation of lawsuit more than one year earlier); *Quinn v. Green Tree Credit Corp., 159 F.3d 759, 769 (2d Cir. 1998)* (holding discharge less than two months after plaintiff filed a sexual harassment complaint with management and ten days after filing complaint with state human rights office provided *prima facie* evidence of a causal connection between protected activity and retaliation); *and Grant v. Bethlehem Steel Corp., 622 F.2d 43, 45-46 (2d Cir. 1980)* (holding eight-month gap between EEOC complaint and retaliatory action suggested a causal relationship), *with Hollander v. American Cyanamid Co., 895 F.2d 80, 85-86 (2d Cir. 1990)* (holding passage of three months too long to suggest a causal relationship between complaint and failure to provide good recommendation)).

[*14] *C. Immunities*

Local legislators, sued in their personal capacities under *Section 1983*, are entitled to absolute immunity from suit for their legislative activities. *See Bogan v. Scott-Harris, 523 U.S. 44, 49, 118 S. Ct. 966, 140 L. Ed. 2d 79 (1998)* ("[W]e now hold that local legislators are likewise absolutely immune from suit under *§ 1983* for their legislative activities."); *see also Carlos v. Santos, 123 F.3d 61, 66 (2d Cir. 1997)* (holding that absolute immunity extends to local legislators). The Supreme Court noted that absolute immunity for local legislators under *Section 1983* finds support in both history and reason. At the time Congress enacted *Section 1983*, the common law deemed local legislators to be absolutely immune from suit for their legislative activities. New York's highest court, for example, held that municipal alderman were immune from suit for their discretionary decisions. *See Bogan, 523 U.S. at 49-50* (citing *Wilson v. New York, 1 Denio 595 (1845))*. The Supreme Court reasoned that the "time and energy required to defend against a lawsuit are of particular concern at the local level, where the part-time citizen-legislator [*15] remains commonplace . . . , [a]nd the threat of liability may significantly deter service in local government, where prestige and pecuniary rewards may pale in comparison to the threat of civil liability." *Bogan, 523 U.S. at 52*.

Absolute legislative immunity attaches to all actions taken "'in the sphere of legitimate legislative activity.'" *Id. at 54* (quoting *Tenney v. Brandhove, 341 U.S. 367, 376, 71 S. Ct. 783, 95 L. Ed. 1019 (1951))*. In determining whether an act is legislative, the Court is to focus on the "nature of the act, rather than on the motive or intent of the official performing it." *Id. at 54*. In this regard, the Supreme Court noted that officials outside of the legislative branch are entitled to legislative immunity when they perform legislative functions, such as introducing a budget and signing into law an ordinance. *See id. at 55*.

*D. Plaintiff's First Amendment Retaliation Claim*

Under the liberal pleading standard, plaintiff appears to have satisfied *Section 1983*'s requirements for a *First Amendment* retaliation claim: first, defendants do not dispute that he engaged in constitutionally protected speech; second, defendants voted [*16] not to fund his position and thereby eliminated it, which the Court will assume *arguendo* constitutes an adverse employment decision [6]; and, finally, given the timing of plaintiff's public comments, January 2000--October 2000, and defendants' elimination of his employment position, November 2000, plaintiff established a causal connection between his public speech and the adverse employment determination. Plaintiff's claims, however, are ineffective against defendants because in proposing and enacting a budget, defendants performed distinctively legislative activities and therefore enjoy absolute immunity.

   6   Defendants have submitted portions of the City Code and Charter to support their argument that plaintiff was not demoted. On a motion to dismiss, the Court must take care not to rely upon facts outside of the complaint. Although some Circuit Courts have taken judicial notice of city charters and related ordinances, *see Demos v. City of Indianapolis, 302 F.3d 698, 706 (7th Cir. 2002)* (finding that a district court may take judicial notice of public statutes including city charters and city ordinances which fall within the

category of common knowledge); *Newcomb v. Brennan*, 558 F.2d 825, 829 (7th Cir. 1977) (same); *Melton v. City of Oklahoma City*, 879 F.2d 706, 724 & n. 25 (10th Cir. 1989) (court may take judicial notice of local ordinances), *vacated on other grounds*, 928 F.2d 920 (10th Cir. 1991) (en banc); the Second Circuit has yet to join them. Accordingly, the Court has not considered the City Code or City Charter in its disposition of plaintiff's *First Amendment* retaliation claim. Moreover, the issue of whether plaintiff was demoted is not essential to the Court's adjudication of plaintiff's claims. As noted above, the Court assumes *arguendo* that plaintiff suffered an adverse employment action when his employment position was eliminated from the City's budget.

[*17] *Bogan* is particularly instructive here, for it presents a similar fact pattern. In *Bogan*, petitioner, the mayor of Fall River, Massachusetts, proposed a budget that eliminated 135 city employment positions, including the elimination of Fall River's Department of Health and Human Service ("DHHS"), of which respondent was the *sole* employee. The Fall River City Council Ordinance Committee approved the ordinance eliminating DHHS and by a vote of six to two adopted it. Thereafter, the Mayor signed the ordinance into law. Respondent then filed suit under *Section 1983* against the City of Fall River, the mayor, a members of the Fall River City Council Ordinance Committee and other city officials alleging that the elimination of DHHS was motivated, in part, by a desire to retaliate against her for exercising her *First Amendment* rights in filing a previous complaint against one of Fall River's employees. The Supreme Court found that under such circumstances, absolute immunity attached to defendants because their actions were legislative in nature: "the ordinance . . . bore all the hallmarks of traditional legislation . . . [and] reflected a discretionary, policymaking decision [*18] implicating the budgetary priorities of the city and the services the city provides to its constituents." *Bogan*, 523 U.S. at 55-56; *see also Rateree v. Rockett*, 852 F.2d 946, 950-51 (7th Cir. 1988).[7]

7 In *Rateree*, the Seventh Circuit agreed with the district court's conclusion that a municipality's budgetary decision to eliminate certain city employment positions is a "quintessential legislative function" especially because defendants had not hired anyone to replace those who lost their employment positions. 852 F.2d at 950.

Plaintiff argues that defendants' actions were administrative, rather than legislative in nature. In *Rateree*, the Seventh Circuit distinguished between legislative and administrative actions:

> Almost all budget decisions have an effect on employment by either creating or eliminating positions or by raising or lowering salaries. This reality, however, does not transform a uniquely legislative function into an administrative one. [*19] Unlike the employment decisions made in [*Forrester v. White*, 484 U.S. 219, 108 S.Ct. 538, 98 L.Ed.2d 555 (1988)* (finding no judicial immunity for firing of probation officer by judge because of sex)] and [*Davis v. Passman*, 442 U.S. 228, 99 S.Ct. 2264 60 L.Ed.2d 846 (1978)* (finding no legislative immunity for member of Congress for firing of staff employee because of sex)], the defendants here did not fire the plaintiffs, but rather eliminated their jobs from the city budget. Plaintiffs' position would hold a judge liable for a decision in an employment case resulting in the firing of an employee, despite the obvious judicial nature of the act. *Employment decisions are not administrative when accomplished through traditional legislative functions.* They are not "employment decisions" at all but instead, legislative, public policy choices that necessarily impact on the employment policies of the governing body. The political decision making inevitably involved in exercising budgetary restraint strikes at the heart of the legislative process and is protected legislative conduct.

852 F.2d at 950-51 (emphasis added). Plaintiff [*20] cites two cases in support of his position, but his reliance on *Harhay v. Town of Ellington Bd. of Educ.*, 323 F.3d 206 (2d Cir. 2003) and *Brennan v. Straub*, 246 F.Supp.2d 360 (S.D.N.Y. 2003) appears misplaced. The facts of both cases are easily distinguishable from the facts as set forth in plaintiff's complaint. In *Harhay*, the plaintiff brought an action against the Town of Ellington's Board of Education (the "Board"), Superintendent Richard E. Packman, and the individual members of the Board alleging that they violated her rights under *Section 1983* when they refused to accept the resignation of another teacher and rehire plaintiff to fill the resulting vacancy. Defendants moved for summary judgment asserting, *inter alia*, that defendants enjoyed legislative and qualified immunity as to plaintiff's claim. The Second Circuit found that "[t]he Board did not engage in the kind

of broad, prospective policymaking that is characteristic of legislative action." *Harhay, 323 F.3d at 211*. As is relevant to plaintiff's complaint, however, the Second Circuit reiterated that to determine whether legislative immunity applies, the focus [*21] remains the nature of the act. *Id.*

In *Brennan*, the plaintiff, a former Assistant to the White Plains Commissioner of Public Safety, sued the City of White Plains, and White Plains' Commissioner of Public Safety, Deputy Commissioner of Public Safety, Personnel Officer, Executive Officer, and Corporation Counsel alleging that they had retaliated against her after she filed a complaint with the Equal Employment Opportunity Commission. Defendants had submitted an ordinance to the White Plains Common Council to abolish plaintiff's job title, which it subsequently adopted. The *Brennan* court noted that "this case differs from the heartland of legislative immunity cases because the defendants are not members of a legislative body. Instead, they are in support positions to the legislative body." *246 F.Supp.2d at 364*. The *Brennan* court concluded that defendants' immunity argument was unavailing because the facts as alleged in the complaint did not establish that defendants' actions were legislative, as opposed to administrative. *See id.*

Here, however, the facts as alleged in plaintiff's complaint indicate that defendants' actions were legislative in nature, [*22] irrespective of the individual defendants' motives, and as such they are immune from *Section 1983* liability. *See Bogan, 523 U.S. at 55-56; Campana v. City of Greenfield, 38 F.Supp.2d 1043, 1049 (E.D. Wis. 1999)* ("The *Bogan* Court found that a decision by local legislators to eliminate an employment position from local government was clearly a legislative act."). Therefore, count one of plaintiff's complaint fails to state a cause of action.

### E. Plaintiff's § 1983 Civil Conspiracy Claim

A plaintiff may assert a civil conspiracy claim under *Section 1983* for the concerted deprivation of a constitutional right under color of state law. *See Dixon v. City of Lawton, 898 F.2d 1443, 1449 n. 6 (10th Cir. 1990)*. A plaintiff asserting a *Section 1983* conspiracy claim must first prove a violation of the underlying constitutional right, *see Singer v. Fulton County Sheriff, 63 F.3d 110, 119 (2d Cir. 1995)*, or in other words, a civil conspiracy claim "doe[es] not set forth an independent cause of action" but rather is "sustainable only after an underlying tort claim has been established," *McCarthy v. Kleindienst, 239 U.S. App. D.C. 247, 741 F.2d 1406, 1413, n.7 (D.C. Cir. 1984)*. [*23] Because plaintiff's underlying *First Amendment* retaliation claim, upon which plaintiff bases his civil conspiracy claim, fails, so too must his civil conspiracy claim fail. *See Zappala v. Albicelli, 954 F.Supp. 538, 546 (N.D.N.Y. 1997)* (explaining that because defendants "are entitled to qualified immunity on all the individual Constitutional claims, a separate conspiracy claim based only on the exact same conduct fails as well").

Even if plaintiff's *First Amendment* retaliation claim had survived dismissal, his civil conspiracy claim would still fail. To prove a conspiracy cognizable under *Section 1983*, a plaintiff must show: "(1) an agreement between two or more state actors or between a state actor and a private entity; (2) to act in concert to inflict an unconstitutional injury; and (3) an overt act done in furtherance of that goal causing damages." *Pangburn v. Culbertson, 200 F.3d 65, 72 (2d Cir. 1999)* (citation omitted). Both parties acknowledge the "intracorporate" defense which provides that "[w]here the individual defendants are all employees of the same institutional defendant, a claim of conspiracy will not stand." *Nat'l Congress for Puerto Rican Rights v. City of New York, 75 F.Supp.2d 154, 168 (S.D.N.Y. 1999)* [*24] (internal quotations and citation omitted). Courts have extended the intracorporate defense to apply to public entities and to alleged conspiracies involving public employees. *See Rini v. Zwirn, 886 F.Supp. 270, 292 (E.D.N.Y. 1995)* (collecting cases). Here, there is no external party: all of the individual defendants are agents or officers of the City.

Plaintiff relies on the so-called "personal interest" exception to the intracorporate defense, which applies to individuals within a single corporate entity where "each defendant possessed an independent, personal conspiratorial purpose." *Everson v. New York City Transit Auth., 216 F.Supp.2d 71, 76 (E.D.N.Y. 2002)*. With respect to defendants Gallagher, Hall, Dunsmoor, and Donahue, plaintiff's complaint fails to demonstrate that they pursued any personal interests in voting in favor of the budget that eliminated plaintiff's employment position. [8] With respect to Gosek and Mercier, plaintiff has alleged facts which suggest that they may have had a personal *bias* against plaintiff, but "personal bias does not constitute personal interest and is not sufficient to defeat the intracorporate conspiracy [*25] doctrine." *Bond v. Board of Educ., 1999 U.S. Dist. LEXIS 3164, 1999 WL 151702, at *2 (E.D.N.Y. Mar. 17, 1999)* (explaining that although complaint alleged that defendant wanted to "get rid of" plaintiff, this personal bias would not stop the application of the intracorporate doctrine). The Court finds that count two of plaintiff's complaint fails to state a cause of action.

---

8 Plaintiff's memorandum of law takes the same approach. Plaintiff's argument in support of plaintiff's civil conspiracy claim exclusively focuses on Mercier and Gosek.

### F. Plaintiff's Section 1983 Claim Against the City [9]

9 Plaintiff attempted to supplement the record by letter request/brief after the parties' oral argument with respect to his *Section 1983* claim against the City. Arguing that the record is closed and characterizing plaintiff's attempt as untimely, defendants requested that the Court reject plaintiff's letter request/brief. Judge Howard G. Munson, who was previously assigned to this case, *see* Dkt. No. 12, Order, accepted plaintiff's opposition papers and heard oral argument on defendants' motion. When plaintiff submitted his opposition papers and appeared for oral argument, the Court must assume that plaintiff was on full notice with respect to relevant issues. Neither the Federal Rules of Civil Procedure nor the Local Rules permit such a surreply, and the Court is under no obligation to give plaintiff another chance to make his arguments. *See In re Vouzianas, 259 F.3d 103, 108 n.2 (2d Cir. 2001).* The Court will not consider plaintiff's letter request/brief in its disposition of the instant motion.

[*26] In a suit under *Section 1983*, a municipality may not be held liable on a theory of respondeat superior. *See Monell v. Dep't of Social Services, 436 U.S. 658, 694, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978).* "It may, however, be held liable if the conduct that caused the unconstitutional deprivation was undertaken pursuant to a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers[,] . . . [or] pursuant to governmental 'custom' even though such a custom has not received formal approval through the body's official decisionmaking channels." *Jeffes v. Barnes, 208 F.3d 49, 56-57 (2d Cir. 2000)* (citation omitted). Moreover, "only those municipal officials who have final policymaking authority may by their actions subject the government to § 1983 liability." *Jeffes, 208 F.3d at 57* (quoting *St. Louis v. Praprotnik, 485 U.S. 112, 123, 108 S. Ct. 915, 99 L. Ed. 2d 107 (1988)).* In *Jeffes*, the Second Circuit further explained that:

> the official in question need not be a municipal policymaker for all purposes. Rather, with respect to the conduct challenged, he must be responsible under state law [*27] for making policy in that area of the [municipality's business]. Thus, the court must ask whether the government official is a final policymaker for the local government in a particular area, or on the particular issue involved in the action.

*208 F.3d at 57* (internal citations and quotations omitted).

Here, there is little doubt that defendants have final policymaking authority for the City: the Common Council is the City's legislative body and the Mayor has limited legislative duties as well. A much more thornier question is: what percentage of a municipality's legislative body must be spurred by a constitutionally impermissible motive before the municipality itself may be held liable under *Section 1983* for the adoption of a facially neutral policy or ordinance? As one court has observed, "the case law proves a fickle companion," in this regard. *Scott-Harris v. City of Fall River, 134 F.3d 427, 427 (1st Cir. 1997), rev'd on other grounds, Bogan, 523 U.S. at 48 n. 2.*

Courts have take various approaches to this question. Some courts appear to have held that a plaintiff must demonstrate that a majority of the members of the legislative [*28] body acted from a constitutionally proscribed motive before this kind of municipal liability can attach. Often this position is implied rather than specifically articulated. *Id.* (citing *United States v. City of Yonkers, 856 F.2d 444, 457-58 (2d Cir. 1988)).* Other courts, however, have been more forthcoming. In *Church v. City of Huntsville, 30 F.3d 1332 (11th Cir. 1994)*, several homeless plaintiffs brought a *Section 1983* action alleging that the city had adopted a policy to drive them away from the community. The plaintiffs based their complaint on the acts and statements of one councilman on a five-member city council. The Eleventh Circuit observed that a single council member did not have any authority either to establish municipal policy or to bind the municipality and that final policymaking authority rested with the entire five-member city council. *See Church, 30 F.3d at 1343-44.* Examining the evidence against the other four councilors, the Eleventh Circuit found that two of them had opposed the alleged discriminatory policy while the other two council members had expressed no views on the subject. The Eleventh Circuit refused [*29] to draw an inference of discriminatory intent from the silence of council members, *see id. at 1344 n. 5,* and rejected the plaintiffs' claim. "Other courts, acting principally in the areas of race and gender discrimination, have not required evidence of the motives of a majority of the legislative body before imposing liability on the municipality under *section 1983.*" *Scott-Harris, 134 F.3d at 437.* Eschewing a bright line rule, the *Scott-Harris* panel held that in a significantly compelling case, the requirement that a plaintiff prove a bad motive on the part of a majority of the members of the legislative body might be relaxed where plaintiff "muster[s] evidence of both (a) bad motive on the part of at least a significant bloc of legislators, and (b) circumstances suggesting the probable complicity of others." *Id. at 438.* For illustrative purposes, the First Circuit added that "evidence of procedural anomalies, acquiesced in by

a majority of the legislative body may support such an inference." *Id.*

In *Gupta v. Town of Brighton, 9 F.Supp.2d 242 (W.D.N.Y. 1998), aff'd 182 F.3d 899 (2d Cir. 1999)* [*30] (unpublished table opinion), the court applied the reasoning of *Scott-Harris* in explaining that "where the two members [who intended to discriminate against plaintiff with their votes] constituted a minority of the [five-member] Town Board, and there [we]re no allegations that the remaining members discriminated or intended to discriminate against the plaintiff," municipal liability would not attach. *Gupta, 9 F.Supp.2d at 245-46*.

Here, the Common Council is comprised of seven members. Plaintiff did not name as defendants the two council members who voted against the budget, and he does not attribute a bad motive to either of them. With respect to the five other council members who voted for the budget, plaintiff's complaint alleges that: (1) Mercier harbored animus towards plaintiff because of a prior public dispute; (2) Dunsmoor told Frank Barilla, Chairman of the City's Zoning Board of Appeals, that he was unhappy with plaintiff's public comments and did not wish to help plaintiff retain his employment position, *see* Dkt. No. 1, Compl.; and, (3) Gallagher concurred with Thad Iorizzo, the City's former building inspector, that the elimination of the [*31] zoning enforcement officer position was politically motivated in that Gosek was trying to remove employees tied to the previous administration, *see id.* at P 30. The complaint fails to allege that either Hall or Donahue harbored any animus toward plaintiff or that misbegotten motives informed their respective votes. Accordingly, the Court finds that at best, [10] plaintiff alleges that only three of the seven Common Council members had a bad motive when they voted for the budget. Furthermore, plaintiff's allegations show no evidence of any procedural anomalies in the Vote from which the Court might infer a conspiracy. *See Scott-Harris, 134 F.3d at 438*. The Court finds that count three of plaintiff's complaint fails to state a cause of action.

> 10 Gallagher's statement reveals no distaste for plaintiff's public statements; her statement seems more akin to the "bland references" discussed in *Collins v. Nuzzo, 244 F.3d 246, 251 (1st Cir. 2001)* (Moreover, Gallagher's purported statement seems to lack a fundamental indicia of retaliation. Retaliate is defined in pertinent part as, "to repay in kind" or "to inflict in return," OXFORD ENGLISH DICTIONARY (2d ed. 1989). Plaintiff, however, does not allege any personal riff or disagreement with Gallagher, and there is no evidence to suggest that in casting her vote, she was motivated to "return the favor," so to speak, to plaintiff.

[*32] III. CONCLUSION

WHEREFORE, after careful consideration of the parties' submissions and the applicable law, it is hereby

ORDERED, that defendants' motion (Dkt. No. 6) pursuant to *Rule 12(b)(6) of the Federal Rules of Civil Procedure* to dismiss plaintiff's complaint in its entirety and with prejudice is GRANTED.

IT IS SO ORDERED.

Dated: March 26, 2006

Syracuse, New York

Norman A. Mordue

Chief United States District Court Judge