**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**ONEBEACON AMERICA INSURANCE**
**COMPANY,** as subrogee of The
Garrett Hotel Group, Inc.,

                    **Plaintiff,**               **8:07-cv-900**
                                             **(GLS\RFT)**

        **v.**

**COMSEC VENTURES**
**INTERNATIONAL, INC.** and **MAHONEY**
**NOTIFY-PLUS, INC.,**

                   **Defendants.**
_____

**APPEARANCES:**                **OF COUNSEL:**

**FOR THE PLAINTIFF:**

Cozen, O'Connor Law Firm      JOHN B. GALLIGAN, ESQ.
The Atrium                  MICHAEL J. IZZO, ESQ.
1900 Market Street          STEVEN K. GERBER, ESQ.
3rd Floor
Philadelphia, PA 19103

Hacker, Murphy Law Firm      JAMES E. HACKER, ESQ.
7 Airport Park Boulevard
Latham , NY 12110-0104

**FOR THE DEFENDANTS:**

Napierski, Vandenburgh Law Firm THOMAS J. O'CONNOR, ESQ.
296 Washington Avenue Extension   ASA S. NEFF, ESQ.
Albany, NY 12203

Wilson, Elser Law Firm            CATHLEEN GIANNETTA, ESQ.
3 Gannett Drive                   THOMAS A. LEGHORN, ESQ.
White Plains, NY 10604            BERNICE E. MARGOLIS, ESQ.

**Gary L. Sharpe**
**District Court Judge**

## MEMORANDUM-DECISION AND ORDER

## I. Introduction

Plaintiff OneBeacon America Insurance Company (OneBeacon) brings this diversity action as the subrogee of the Garrett Hotel Group (Garrett), seeking compensation for fire damage incurred to Garrett's property.  OneBeacon asserts claims for negligence, breach of contract, breach of warranty, consumer fraud, and misrepresentation.  Pending are: (1) defendant Mahoney Notify-Plus, Inc.'s motion for summary judgment (Dkt. No. 53); (2) defendant Comsec Ventures International, Inc.'s motion seeking dismissal of Mahoney's cross-claims against it pursuant to FED. R. CIV. P. 12(b)(6) or 56(b), and attorneys' fees; and (3) OneBeacon's motion for leave to file a surreply.  For the reasons that follow, Mahoney's motion for summary judgment is denied; Comsec's motion is granted in part and denied in part; and OneBeacon's motion for leave to file a surreply is denied.

## II.  <u>Facts and Procedural History</u>[1]

In or about 1983, defendant Comsec installed a fire alarm system at

the Lake Placid Lodge (LPL), which is owned by Garrett.  The system was

composed of various fire and smoke detection devices and alarms installed

in the five buildings of LPL, of which only the Main Lodge and the Cedar

lodge are relevant here.  The detection devices were wired into a control

--------

[1]The facts are culled from the pleadings, affidavits, and respective Statements of Material Facts submitted by the parties pursuant to N.D.N.Y. L. R. Civ. P. 7.1(a)(3), (see Dkt. Nos. 53:30, 54:3, 57, 61:2), and are construed in the light most favorable to OneBeacon as the nonmoving party. The court notes, however, that OneBeacon has attempted to set forth its version of the facts and refute Mahoney's 7.1 Statement of Material Facts predominantly through its experts' affidavits.  These affidavits generally fail to create an issue of fact for a variety of reasons.  First, significant portions of the affidavits set forth a narrative of the circumstances underlying this action.  (*See, e.g.*, Pl. SMF ¶¶ 18-22, 46, 63, 71, 76, 78-79, 81-83, 85, 87, 91 and affidavits cited therein, Dkt. No. 57 (discussing, *inter alia*, the work performed by Mahoney, whether or not Mahoney misrepresented that the alarm system was functioning, and what Lake Placid Lodge employees understood about the alarm system).) This use of experts is patently improper since there is no indication that the expert witnesses have personal knowledge of these facts such that they may testify as a lay witness, and a juror is clearly capable of understanding such matters without expert assistance. *See, e.g.*, *Andrews v. Metro N. Commuter R.R. Co.*, 882 F.2d 705, 708 (2d Cir. 1989); *Highland Capital Mgmt., L.P. v. Schneider*, 379 F. Supp. 2d 461, 468-69 (S.D.N.Y. 2005) (rejecting expert evidence which did not relate to matters outside of jurors' outstanding and as to which the expert had no first-hand knowledge).  Second, to the extent the expert affidavits label Mahoney's actions in servicing the alarm system "negligent," (*See, e.g.*, Pl. SMF ¶¶ 18, 21, 22, 40, 41, 42, 84, 92 and affidavits cited therein; Dkt. No. 57.), they are of no weight.  *See Marx & Co., Inc. v. Diners' Club Inc.*, 550 F.2d 505, 509-10 (2d Cir. 1977); *Rondout Valley Cent. Sch. Dist. v. Coneco Corp.*, 321 F. Supp.2d 469, 480 (N.D.N.Y. 2004).  These defects, combined with OneBeacon's frequently irrelevant denials, lack of record citations, and inclusion of facts in its briefing which are absent from its 7.1 statement have resulted in the court deeming much of Mahoney's 7.1 Statement of Material Facts admitted.  However, the court declines Mahoney's invitation to exclude OneBeacon's expert affidavits as beyond the scope of the Rule 26 expert reports.  Insofar as the affidavits speak to the cause of the fire, the burn time, the failure of the alarm system, and the amount of damages, they permissibly elaborate on the Rule 26 reports rather than proffering entirely new theories or contradicting the reports and deposition testimony.

panel in each building.  If a device was tripped, the alarm in that building would go off and the control panel would send a radio signal through a linear wireless transmitter to a wireless receiver in the centrally located Cedar Lodge.  A signal would then be sent over the phone lines from a communicator panel in the Cedar Lodge to the monitoring company, which would contact the fire department.  The wireless transmitters installed by Comsec were not approved for commercial use, could not be supervised,[2] and were subject to interference.

Defendant Mahoney is in the fire and security alarm systems business.  In 2002 or 2003, their salesman, Thomas Corlew, reviewed LPL's fire alarm system.  Corlew informed LPL's maintenance man that the system needed to be upgraded and hardwired so it could be supervised because it did not provide adequate protection in its current state.  A quote was prepared for this work, which specifically advised that the fire alarm system was unsupervised as it existed at the time.  This quote was rejected by LPL.

In September or October of 2005, Mr. Corlew returned to LPL at the

_____

[2]Neither Mahoney nor OneBeacon has adequately explained to the court the difference between a supervised and unsupervised fire alarm system.  However, it appears from the court's own research that a supervised system will identify and notify the property owner of defects or problems in the fire alarm system, while an unsupervised system will not.

request of Ernie Rice, LPL's current facility manager, and reiterated that

the system needed to be hardwired, as it was unsupervised, unsafe, and

unreliable.  Mr. Rice has testified that he knew what it meant for the system

to be unsupervised and the difference between a hardwired and wireless

system based on discussions in September or November of 2005.[3]

According to Mr. Corlew, Mr. Rice stated that LPL was "not going to do

anything now, just get the main thing up and running; and then we can sort

out the problems afterwards."  The only change to the system authorized

was the replacement of the communicator panel in the Cedar Lodge so it

could report to Mahoney's central monitoring system.  On November 23,

2005, LPL agreed to Mahoney's proposal for the installation of this

communicator panel and fire monitoring.

On December 1, 2005, Mahoney employee Dave Mattoon installed

the new communicator panel to the existing fire alarm system, and

Mahoney took over system monitoring from Comsec.  Rice asked Mattoon

to check over the system to make sure everything was working, which Rice

---

[3]The court notes that Mr. Rice indicated in his deposition testimony that he was not aware the Comsec system was unsupervised.  Nonetheless, OneBeacon has "admitted that Mr. Corlew advised Mr. Rice that the alarm system need to be upgraded and further advised that the alarm system was 'unsupervised' because the Linear wireless radio transmitters and receivers were not approved for commercial use and were unreliable."  (Pl. SMF Resp. ¶ 25, Dkt. No. 57.)  Given these concessions, there is no issue of fact on this matter.

believes Mattoon did.  However, Mattoon also informed Rice that he was

not sure whether the wireless transmitters and receivers were up to code,

that the transmitters were unreliable, and that the system needed to be

hardwired or separate dialer's had to be installed in each building.  Mattoon

returned on December 2, 2005, at Rice's request, because there were

communications problems with the fire alarm system and LPL was having

false alarms.  On December 2, 5, and 12, Mattoon worked on the alarm

system, which included making adjustments to the Main Lodge control

panel and rewiring the wireless transmitters and receivers.  However,

Mattoon did not hardwire the system or test the detection devices in the

basement of the Main Lodge.

A Security Fire Monitoring Agreement (the Monitoring Agreement)

was executed between the parties on December 8, 2005.  It provided a

limitation of liability and time limitation clause which stated, in relevant part:

> The Subscriber understands and agrees that if the Alarm
> Company or Others should be found liable for personal injury or
> property loss or damage due from a failure of the Alarm
> Company or Others to perform any of the obligations herein,
> including but not limited to installation, repair service,
> monitoring or service or the failure of the System or equipment
> in any respect whatsoever, the Alarm Company and Others'
> liability shall be limited to a sum equal to the total of six (6)
> monthly payments or Two Hundred Fifty ($250.00) Dollars,

> whichever is the greater, and this liability shall be exclusive; and that the provision of this Section shall apply if loss or damage, irrespective of cause or origin, results directly or indirectly to persons or property, from performance or non-performance of the obligations imposed by this contract, or from negligence, active or otherwise, of the Alarm Company or Others.  No suit or action shall be brought against the Alarm Company more than one (1) year after the accrual of the cause of action thereof.

The Agreement also contained a merger clause which stated, in relevant part:

> All verbal or written communications between the parties which occurred prior to the date of this Agreement are merged into the terms of this Agreement and the entire Agreement of the parties is expressed herein above and no verbal understanding or agreement shall alter, change or modify the terms and provisions of this Agreement....  It is understood and agreed that if there is any conflict between this Agreement and the Subscriber's purchase order, or any other document, this Agreement will govern whether such purchase order or other document is executed prior or subsequent to this Agreement.

LPL continues to use the services of Mahoney to this day.

At approximately 9:10 to 9:15 a.m on December 15, 2005, a fire was discovered in the basement ceiling of the Main Lodge by LPL employee Ray Nunez.  When Nunez had previously been in the basement at approximately 9:00 a.m. he had not smelled any smoke.  The fire alarm was manually pulled, and the alarm went off.  However, a signal was not

transmitted from the Main Lodge to the Cedar Lodge.  Therefore, no signal was sent from the Cedar Lodge to Mahoney's central monitoring station. Two LPL employees called the fire department.  However, the entire Main Lodge and parts of the Cedar Lodge were destroyed in the blaze.

On August 31, 2007, OneBeacon filed this action against Comsec and Mahoney.  Mahoney's answer contained cross-claims for contribution and indemnification against Comsec.  Eventually a settlement was reached between OneBeacon and Comsec in the amount of $500,000.  However, Mahoney has refused to release its cross-claims against Comsec.  The court now addresses Mahoney's motion for summary judgment on OneBeacon's claims, and Comsec's motion seeking dismissal of Mahoney's cross-claims and attorneys' fees.

### III.  Standard of Review

The court will consider both Mahoney and Comsec's motions under FED. R. CIV. P. 56.  The standard for the grant of summary judgment is well established, and will not be repeated here.  For a full discussion of the standard, the court refers the parties to its previous opinion in *Bain v. Town of Argyle*, 499 F. Supp.2d 192, 194-95 (N.D.N.Y. 2007).

### IV.  Discussion

## A.    Motion for Leave to File Surreply

As an initial matter, the court denies OneBeacon's motion for leave to

file a surreply, which essentially seeks permission to reargue the same

points addressed in its previous submissions.  "Neither the Federal Rules

of Civil Procedure nor the Local Rules permit such a surreply, and the

Court is under no obligation to give plaintiff another chance to make his

arguments."  *Clark v. City of Oswego*, No. 5:03-CV-202, 2007 WL 925724,

at *7 n.9 (N.D.N.Y Mar. 26, 2006) (citing *In re Vouzianas*, 259 F.3d 103,

108 n.2 (2d Cir. 2001); L. R. CIV. P. 7.1(b) (N.D.N.Y.) ("A surreply is not

permitted.").  Accordingly, OneBeacon is denied leave to file a surreply,

and the proposed surreply submitted with its request will not be considered

in the disposition of Mahoney's motion for summary judgment.

## B.    Merger and Limitation of Liability Clause

As to Mahoney's motion for summary judgment, Mahoney first

contends that OneBeacon's claims must be dismissed because they are

barred by the clause in the Monitoring Agreement providing for a one-year

time limitation on the filing of claims.  To the extent this action is found to

be timely, it is also asserted that the court should enforce the limitation of

liability clause found within the Monitoring Agreement.  Finally, Mahoney

argues that these contractual time limitation and limitation of liability clauses apply to any claims arising out of work it performed on the LPL fire alarm system due to the merger clause contained in the Monitoring Agreement.

Initially, the court notes that OneBeacon's breach of contract claim is clearly untimely under the contractual time limitation clause. OneBeacon has not disputed Mahoney's assertion that its contract claim arises out of the Monitoring Agreement. Nor has any other agreement been proffered as the source of this claim. Further, the clause in the Monitoring Agreement requiring all claims to be brought within one year of accrual will be enforced because it is clearly reasonable. *See, e.g.*, *Chase v. Columbia Nat'l Corp.*, 832 F. Supp. 654, 659-60 (S.D.N.Y. 1993); *Par Fait Originals v. ADT Sec. Sys., Ne., Inc.*, 184 A.D.2d 472 (1st Dep't 1992) (enforcing contract provision limiting time to sue to one year). Thus, the court concurs with Mahoney's contention that OneBeacon's breach of contract claim arises out of the Monitoring Agreement and is subject to the time limitation contained therein. As such, the contract claim is time barred, since it accrued upon the occurrence of the December 15, 2005 fire, and this action was not filed until 2007. *See Liberty Mut. Ins. Co. v. Clark*, 296

A.D.2d 442, 442-43 (2d Dep't 2002).

The court does not agree, however, that the remainder of OneBeacon's claims are subject to the terms of the Monitoring Agreement pursuant to the merger clause.  The general effect of a merger clause is "to require full application of the parol evidence rule in order to bar the introduction of extrinsic evidence to vary or contradict the terms of the writing."  *Primex Int'l Corp. v. Wal-Mart Stores, Inc.*, 89 N.Y.2d 594, 599 (N.Y. 1997).  However, the power of the merger clause does not extend to antecedent contracts or events which are beyond the scope of the contract encompassing the clause.  *Id.* at 600-01; *see also Gem Corrugated Box Corp. v. Nat'l Kraft Container Corp.*, 427 F.2d 499, 503 (2d Cir. 1970) (merger clause in contract for purchase of box materials had no effect on suit for breach of oral contract for stock purchases).  Stated another way, suits arising from events or agreements outside the subject matter of the contract containing the merger clause are not bound by that contract's terms.  *Id.*

Here, OneBeacon's remaining claims arise out of the purportedly negligent work of Mattoon on December 1, 2, and 5.  The subject matter of the Monitoring Agreement, however, is monitoring.  It in no way addresses

11

the installation of communicator panels or the other maintenance and

upgrade work performed by Mattoon.  Further, the paragraph of the

Monitoring Agreement containing the limitation of liability and time limitation

clauses does not indicate that it was intended to extend to claims arising

out of maintenance and upgrade work performed prior to the execution of

the Agreement.  As such, the refusal to apply the terms of the Monitoring

Agreement to claims arising out of Mattoon's work on December 1, 2, and

5 does not conflict with or vary the terms of that Agreement in violation of

the parol evidence rule.

Accordingly, Mahoney's motion as to OneBeacon's breach of

contract claim is granted and that claim is dismissed.  The remainder of

OneBeacon's claims will be addressed individually below.

## C.   <u>Negligence</u>

OneBeacon claims that Dave Mattoon, Mahoney's employee, was

negligent in carrying out the work he performed on the LPL alarm system

on December 1, 2, and 5.  (*See* Pl. SMF Resp. ¶ 8, Dkt. No. 57.)

Specifically, OneBeacon alleges that Mattoon was negligent in: (1) failing to

correct the alarm system's communication problems; (2) leaving in place

the unapproved, unsupervised wireless communication system that caused

the failure of the alarm system; (3) failing to do an adequate test in the Main Lodge; and (4) assuring Lake Placid Lodge, through its maintenance manager, Ernie Rice, that the alarm system was in good working order, when in fact it was not.  (*See* Pl. Resp. at 13-19, Dkt. No. 56; Pl. SMF Resp. ¶ 22, Dkt. No. 57.)  In its motion for summary judgment, Mahoney argues that it did not breach any duty by not upgrading the system, that the work it performed was limited to installation of the communicator panel and was performed properly, and that Mr. Rice was not advised that the system was in good working order, but "only that, under the circumstances, i.e. Lake Placid Lodge declining to hardwire the system, the system was running as best it could."  (*See* Def. Mem. of Law at 8-10, Dkt. No. 53:30; Def. CSMF at 7-9, Dkt. No. 61:3; Def. Reply at 8-9, Dkt. No. 61:1.)

Having reviewed the competing arguments, pleadings, affidavits, and evidence submitted by the parties, the court concludes that summary judgment is not appropriate as to these claims.  As a threshold matter, it is clear that Mahoney owed LPL a duty of reasonable care in carrying out any work it performed on the LPL alarm system.  It is settled under New York law that fire alarm companies providing monitoring services owe a duty of care to their customers independent of their contractual obligations.

13

*Sommer v. Fed. Signal Corp.*, 79 N.Y. 2d 540, 552-53 (N.Y. 1992).  As

explained in *Sommer*, the recognition of this duty reflects the reality that fire

alarm companies "perform a service affected with a significant public

interest," and that "failure to perform the service carefully and competently

can have catastrophic consequences."  *See id.* at 553.  The record is not

sufficiently clear, however, to permit the court to conclude, as a matter of

law, that Mahoney did not breach this duty.  Most significantly, the parties

dispute the precise nature and scope of the work undertaken and

performed by Mahoney, a factual issue central to the ultimate

determination of whether Mahoney acted reasonably.  Accordingly, the

question as to breach is one that must be left to a jury, and Mahoney's

motion for summary judgment is therefore denied as to OneBeacon's

negligence claims.

**D.    Breach of Warranty**

OneBeacon claims that Mahoney breached an implied warranty to

correct "communication problems ... in a good and workmanlike manner."

(*See* Pl. Resp. at 23, Dkt. No. 56.)  The court agrees with Mahoney that

OneBeacon cannot establish this cause of action.  When analyzing a

breach of implied warranty claim under New York law, it is the

14

"predominant purpose" of the underlying transaction that determines the analysis. *See Perlmutter v. Beth David Hosp.*, 308 N.Y. 100, 104 (N.Y. 1954); *Milau v. N. Ave. Dev. Corp.*, 42 N.Y.2d 482, 485-487 (N.Y. 1977). "A hybrid service-sale transaction," or a transaction involving both the transfer of goods and provision of services, "can give rise to a cause of action for breach of warranty ... if the sales aspect of the transaction predominates and the service aspect is merely incidental." *Nickel v. Hyster Co.*, 97 Misc. 2d 770, 773 (N.Y. Sup. Ct. 1978). When, however, the predominant purpose of the hybrid transaction is service, and the transfer of property is incidental, the action lies in negligence, not in breach of warranty. *See Perlmutter*, 308 N.Y. at 104; *Milau*, 42 N.Y.2d at 485-487; *Stafford v. Int'l Harvester Co.*, 668 F.2d 142, 146 (2d Cir. 1981) *abrogated on other grounds*, *Ins. Co. of N. America v. ABB Power Generation*, 91 N.Y.2d 180, 186 (N.Y. 1997).

Here, Mahoney agreed with LPL to provide the service of monitoring its existing alarm system. Incidental to that agreement was the sale and installation of the necessary monitoring equipment. OneBeacon does not dispute that the predominant purpose of this arrangement was to provide monitoring services, and it admits that the equipment provided functioned

properly.  (*See* Pl. Resp. at 23, Dkt. No. 56.)  Therefore, any failure on the part of Mahoney to provide monitoring or other incidental services sounds in negligence and does not give rise to a breach of warranty cause of action.[4]  Accordingly, Mahoney's motion as to this issue is granted, and OneBeacon's breach of warranty claim is dismissed.

**E.    Negligent Misrepresentation and Consumer Fraud**

The court also dismisses OneBeacon's claims for negligent misrepresentation and consumer fraud.  Mahoney has moved for summary judgment on these claims, attacking their substantive merit.  (*See* Def. Mem. of Law at 16-18, Dkt. No. 53:29.)  In its opposition papers, however, OneBeacon has failed to provide any response to these arguments, or even mention the claims.  The court therefore dismisses the claims, deeming them abandoned.  *Maher v. Alliance Mortg. Banking Corp.*, No. 06 CV 5073, 2009 WL 2827682, at *13-14 (E.D.N.Y. Sept. 3, 2009) (collecting cases) ("Federal courts may deem a claim abandoned when a party moves for summary judgment on one ground and the party opposing summary judgment fails to address the argument in any way."); *see also*

---

[4]Although OneBeacon challenges the dismissal of its breach of warranty cause of action, it appears to concede that its claim is one of negligence.  In its memorandum of law, Onebeacon states that its breach of warranty claim is essentially "blended into a negligence cause of action."  (Pl. Resp. at 23, Dkt. No. 56.)

*Anti-Monopoly, Inc., v. Hasbro, Inc.*, 958 F. Supp. 895, 907 n.11 (S.D.N.Y. 1997) ("[T]he failure to provide argument on a point at issue constitutes abandonment of the issue."), *aff'd*, 130 F.3d 1101 (2d Cir. 1997). Accordingly, Mahoney's motion as to these claims is granted and the claims are dismissed.

## F.   Indemnification Claim and Attorneys' Fees

## 1. Indemnification Claim

Finally, Comsec has moved to dismiss the cross-claims for indemnification and contribution asserted against it by Mahoney.  Comsec argues that, pursuant to New York General Obligations Law § 15-108, Mahoney's cross-claim for contribution was extinguished when Comsec settled with OneBeacon, and that there is no basis for Mahoney to seek indemnification.  The court agrees.

Section 15-108 of the General Obligations Law governs the effect of a settlement in a tort case by one of several defendants.  *See* GEN. OBLIG. LAW § 15-108(a).  It provides, in relevant part, that "[a] tortfeasor who has obtained his own release from liability shall not be entitled to contribution from any other person."  *Id.* § 15-108(c).  Section 15-108 does not apply, however, "to claims seeking to vindicate a party's ... common-law right of

17

indemnification." *Glaser v. M. Fortunoff of Westbury Corp.*, 71 N.Y.2d 643,

646 (N.Y. 1998) (citations omitted).  The distinction between contribution

and indemnification is a clear one, and the New York State Court of

Appeals has explained it as follows:

> In the classic indemnification case, the one seeking indemnity
> had committed no wrong, but by virtue of some relationship with
> the tort-feasor or obligation imposed by law, was nevertheless
> held liable to the injured party.  In other words, where one is
> held liable solely on account of the negligence of another,
> indemnification, not contribution, principles apply to shift the
> entire liability to the one who was negligent.  Conversely, where
> a party is held liable at least partially because of its own
> negligence, contribution against other culpable tort-feasors is
> the only available remedy.

*Id.* at 647 (citations and internal quotation marks omitted).  Thus, "where a

party who has settled seeks to avoid the bar to reimbursement posed by

General Obligations Law § 15-108(c), that party must show that it may not

be held responsible in any degree for the plaintiff's damages."  *Id.* (citation

and internal quotation marks omitted).

Here, there is no basis for Mahoney to maintain its contribution or

indemnifcation claims against Comsec.  Initially, as Mahoney concedes,

Cosmec's settlement with OneBeacon extinguished Mahoney's contribution

claim against Comsec under §15-108.  (*See* Def. Mem. of Law at 3-4, Dkt.

18

No. 54:3.)  Mahoney is also unable to maintain its claims for indemnification.  Specifically, because Mahoney was sued by OneBeacon for its own independent acts of negligence, and thus is liable only to the extent of its own fault, the principles of indemnification do not apply and its claim for indemnification cannot survive.  Accordingly, Comsec's motion as to Mahoney's cross-claims is granted, and Mahoney's cross-claims are dismissed.

## 2. Attorneys' Fees

In addition to seeking dismissal of Mahoney's cross-claims, Cosmec seeks an award of the attorneys' fees relating to the making of its motion, claiming that Mahoney unreasonably refused to discontinue its cross-claims.  That request is denied.  To impose the sanctions requested, the court must find that: "(1) the challenged claim was without a colorable basis and (2) the claim was brought in bad faith, i.e., motivated by improper purposes such as harassment or delay."  *Schlaifer Nance & Co. v. Estate of Warhol*, 194 F.3d 323, 336 (2d Cir. 1999).  Here, there is no evidence that Mahoney acted in bad faith in bringing or refusing to discontinue its cross-claims against Cosmec.  Accordingly, an award of attorneys' fees is not appropriate, and Cosmec's motion in that regard is denied.

## V. **CONCLUSION**

**WHEREFORE**, for the foregoing reasons, it is hereby

**ORDERED** that OneBeacon's motion for leave to file a surreply is

**DENIED**; and it is further

**ORDERED** that Mahoney's motion for summary judgment is

**GRANTED** as to OneBeacon's claims for breach of contract, breach of

warranty, negligent misrepresentation, and consumer fraud, and the claims

are therefore dismissed; and it is further

**ORDERED** that Mahoney's motion for summary judgment is **DENIED**

as to OneBeacon's negligence claim; and it is further

**ORDERED** that Comsec's motion seeking dismissal of Mahoney's

cross-claims is **GRANTED**; and it is further

**ORDERED** that Cosmec's motion seeking attorneys' fees is **DENIED**

and it is further

**ORDERED** that the Clerk of the Court provide a copy of this

Memorandum-Decision and Order to the parties.

**IT IS SO ORDERED.**

Albany, New York
January 7, 2010

United States District Court Judge